Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| R.E., and O.E., <br><br> Plaintiffs, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD of ILLINOIS, <br><br> Defendant. | COMPLAINT <br><br> Case No. 2:22-cv-00296 - DBP |

Plaintiffs R.E. and O.E., through their undersigned counsel, complain and allege against Defendant Blue Cross Blue Shield of Illinois ("BCBSIL") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. R.E. and O.E. are natural persons residing in Henrico County, Virginia. R.E. is O.E.'s father.

2. BCBSIL is an independent licensee of the nationwide Blue Cross and Blue Shield network of providers and was the insurer and claims administrator, as well as the fiduciary under ERISA for the insurance plan providing coverage for the Plaintiffs ("the Plan") during the treatment at issue in this case.

1

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). R.E. was a participant in the Plan and O.E. was a beneficiary of the Plan at all relevant times. R.E. and O.E. continue to be participants and beneficiaries of the Plan.

4. O.E. received medical care and treatment at Solacium Sunrise ("Sunrise") from March 17, 2020, to December 10, 2020. Sunrise is a licensed residential treatment facility located in Washington County, Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. BCBSIL denied claims for payment of O.E.'s medical expenses in connection with her treatment at Sunrise.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because BCBSIL does business in Utah, and the treatment at issue took place in Utah.

8. In addition, R.E. has been informed and reasonably believes that litigating the case outside Utah will likely lead to substantially increased litigation costs for which he will be responsible to pay, which would not be incurred if venue of the case remains in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for

appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Sunrise

10. O.E. was admitted to Sunrise on March 17, 2020, due to problems with drug use, oppositional behavior, poor school performance, and risky behaviors such as running away from home and sexual promiscuity.

11. R.E. attempted to preauthorize O.E.'s treatment but was told verbally that preauthorization would be denied as Sunrise did not have nursing staff onsite 24/7. R.E. requested a denial in writing, but BCBSIL refused to provide him with one.

12. In fact, the language of the insurance policy does require, among other things, that residential treatment centers have nursing staff on the site of the facility 24 hours a day, 7 days a week.

13. On November 18, 2020, R.E. submitted an appeal of the denial of O.E.'s treatment at Sunrise. He reminded BCBSIL that under ERISA he was entitled to certain protections during the review process, including a full, fair, and thorough review conducted by an appropriately qualified reviewer, which took into account all of the information he provided, and which gave him the specific reason(s) for the adverse determination, referenced the specific plan provisions on which the determination was based, and which gave him the information necessary to perfect the claim.

14. R.E. also asked that the reviewer have training in MHPAEA and requested to be provided with a copy of all documentation related to the initial denial as well as the level one appeal determination, including the reviewer's name, credentials, experience, case notes, or reports.

15. R.E. wrote that Sunrise was duly licensed by the State of Utah and was also accredited by The Joint Commission. He contended that coverage was available for the services O.E. received at Sunrise, and in any event, Sunrise met the definition of a provider which the Plan defined as:

    > PROVIDER means any health care facility (for example, a Hospital or Skilled Nursing Facility) or person (for example, a Physician or Dentist) or entity duly licensed to render Covered Services to you.

16. R.E. wrote that BCBSIL's denial appeared to violate MHPAEA. He wrote that MHPAEA compelled insurers to offer coverage for mental health services at parity with comparable medical or surgical benefits. R.E. identified skilled nursing facilities, inpatient rehabilitation, and hospice as some of the medical or surgical analogues to the mental health treatment O.E. received.

17. R.E. alleged that BCBSIL was imposing limitations on residential treatment facilities which it did not equally apply to analogous medical or surgical facilities. To illustrate this, R.E. quoted the definitions in the insurance policy of some of the appropriate medical/surgical analogues to the residential treatment care O.E. received. He quoted them as follows:

    > HOSPICE CARE PROGRAM PROVIDER means an organization duly licensed to provide Hospice Care Program Service.
    >
    > SKILLED NURSING FACILITY means an institution or a distinct part of an institution which is primarily engaged in providing comprehensive skilled

> services and rehabilitative Inpatient care and is duly licensed by the appropriate governmental authority to provide such services.
>
> DIALYSIS FACILITY means a facility (other than a Hospital) whose primary function is the treatment and/or provision of maintenance and/or training dialysis on an ambulatory basis for renal dialysis patients and which is duly licensed by the appropriate governmental authority to provide such services.
>
> LONG TERM CARE SERVICES means those social services, personal care services and/or Custodial Care Services needed by you when you have lost some capacity for self-care because of a chronic illness, injury or condition. (emphasis in original)

18. R.E. pointed out that none of these facilities required 24 hour nursing presence and instead made approval contingent on whether the facility was licensed by the appropriate governmental authority.

19. R.E. identified another limitation placed on residential treatment services which he alleged to violate MHPAEA as well as the Patient Protection and Affordable Care Act ("ACA"). He pointed out that the ACA required insurers to offer "Mental Health and substance use disorder services, including behavioral health treatment."

20. He then quoted from the exclusions section of the Plan which excluded coverage for "Residential Treatment Centers, except for Inpatient Substance Use Disorder Rehabilitation Treatment and as specifically mentioned under this certificate."

21. He then stated that these types of exclusions were specifically identified by the Department of Labor as a sign of a likely MHPAEA violation.

22. He contended that this exclusion for mental health residential treatment was a violation of both MHPAEA and the ACA.

23. R.E. wrote that he had demonstrated that he was entitled to relief under MHPAEA as he had demonstrated that:

//

5

    (1) The Plan is subject to MHPAEA;
    (2) The Plan provides both medical or surgical benefits and mental health or substance use disorder benefits;
    (3) The services comparable to O.E.'s intermediate treatment at Sunrise include skilled nursing facility services, subacute rehabilitation facility services, and inpatient hospice services; and
    (4) BCBSIL was imposing treatment limitations on O.E.'s mental health care which were stricter than the limitations it imposed on analogous medical or surgical services.

24. R.E. reiterated that Sunrise was a licensed treatment provider and contended that BCBSIL could not discriminate against a provider who was acting within the scope of that license.

25. R.E. requested that BCBSIL perform a parity analysis to determine whether the Plan was truly in compliance with MHPAEA. He asked not only that BCBSIL conduct this analysis but also that it provide him with physical copies of the results of this analysis, as well as any documentation used. He asked that in the event the denial was maintained that the reviewer specifically explain how BCBSIL had not violated MHPAEA.

26. He also requested to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any clinical guidelines or medical necessity criteria utilized in the determination, as well as their medical or surgical equivalents, whether or not these were used to evaluate the claim, along with any reports or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates. (collectively the "Plan Documents")

27. He asked if BCBSIL was not in possession of these documents or was not acting on behalf of the Claims Administrator in this capacity that it forward his request to the appropriate entity.

28. In a letter dated December 22, 2020, BCBSIL upheld the denial of payment for O.E.'s treatment. The letter gave the following justification for the denial:

> After our administrative review of the member's claims and benefit plan, we have determined that these claims have processed accurately. Claim 02020095555Q3870H has denied with ineligible reason code 700. This means the provider submitted an adjustment to this claim. A corrected claim is required. Claim 020203185599E640H is a duplicate of 02020095555Q3870H. No benefits are available at this time. We regret our decision could not be more favorable.
>
> **Procedure(s) Reviewed:**
> Residential Treatment
>
> **Additional information can be found in the member's MCDONALD'S LICENSEES & RONALD MCDONALD HOUSE Summary Plan Description and/or benefit booklet:**
>
> In the 'Important Terms' section of the benefit book, it states:
> "Maximum Allowance – The amount determined by Blue Cross and Blue Shield of Illinois participating plans that PPO providers have agreed to accept as payment in full for a particular covered service. All benefit payments for covered services rendered by either PPO or non-PPO providers will be based on the schedule of Maximum Allowances."
>
> There is one internal appeal available to you. Your internal appeal rights have now been exhausted. (emphasis in original)

29. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

30. The denial of benefits for O.E.'s treatment was a breach of contract and caused R.E. to incur medical expenses that should have been paid by the Plan in an amount totaling over $390,000.

31. BCBSIL only partially complied with Plaintiffs' request to produce a copy of the Plan Documents. The document production included numerous duplicate items and many out-of-order pages from the Plaintiffs' appeal.

32. The vast majority of the provided material (2000+ pages) consisted of medical records from Sunrise. The only other materials included were a copy of the summary plan description, the denial letter, a few pages of miscellaneous documents, and the appeal materials R.E. had himself provided to BCBSIL.

33. BCBSIL largely failed to produce a copy of the Plan Documents, including the materials it was statutorily obligated to provide. Instead, it sent the Plaintiffs a series of documents which were largely already in their possession.

## FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

34. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBSIL, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

35. BCBSIL and the Plan failed to provide coverage for O.E.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

36. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

37. The denial letter produced by BCBSIL does little to elucidate whether BCBSIL conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them

with the "full and fair review" to which they are entitled. BCBSIL failed to substantively respond to the issues presented in R.E.'s appeal and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

38. In fact, BCBSIL's denial letter (again, there is only one as BCBSIL refused to provide a letter for the initial verbal denial), does not address any of the arguments raised in R.E.'s appeal in any capacity

39. BCBSIL and the agents of the Plan breached their fiduciary duties to O.E. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in O.E.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of O.E.'s claims.

40. The actions of BCBSIL and the Plan in failing to provide coverage for O.E.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))**

41. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of BCBSIL's fiduciary duties.

42. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

43. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

44. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

45. The medical necessity criteria used by BCBSIL for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

46. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for O.E.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

47. For none of these types of treatment does BCBSIL exclude or restrict coverage of medical/surgical conditions by imposing restrictions in the insurance policy language that

in order to obtain coverage under the terms of the policy the facility must have 24/7 onsite nurses as the insurance policy requires for coverage of residential treatment.

48. The Departments of Labor and Health and Human Services jointly compiled a list of "warning signs" which often accompany a violation of MHPAEA. One such warning sign was listed as the exclusion of substance use treatment for mental healthcare.

49. In the case of BCBSIL, the requirement is reversed and substance use residential treatment services are unambiguously covered but residential mental health treatment is only covered inasmuch as it is "specifically mentioned under this certificate." Otherwise, it is listed as an exclusion under the insurance policy.

50. BCBSIL does not have a similar substance use exclusion for analogous medical or surgical services. As this is a restriction which is only applied to residential mental health treatment, it is a violation of MHPAEA.

51. When BCBSIL and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

52. BCBSIL and the Plan evaluated O.E.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice.

53. Requiring that residential treatment centers have nurses onsite 24 hour a day, 7 days a week as a condition of coverage is at odds with generally accepted standards of medical practice.

54. The requirement that residential treatment centers have nurses onsite 24/7 increases costs of healthcare for mental health and substance use disorder treatment because it adds medically unnecessary service components to residential treatment.

55. In addition, because very few, if any, licensed residential treatment centers have nurses onsite 24/7, the effect of BCBSIL placing the 24/7 onsite nursing treatment limitation in its policy is to reduce the access of BCBSIL insureds to residential treatment for mental health and substance use disorder conditions in a way that violates MHPAEA.

56. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

57. As an example of disparate application of medical necessity criteria between residential mental health treatment and analogous medical or services, R.E. pointed out that while the insurance policy required "24 hour onsite nursing service for patients with Mental Illness and/or Substance Use Disorders," it had no similar requirement for analogous medical or surgical services.

58. R.E. noted that Sunrise was licensed by the state of Utah as a residential treatment center and was also accredited by The Joint Commission and complied with all governing state regulations. Sunrise was not expected or required to have 24-hour nursing presence in order to maintain either licensure with the state or accreditation with The Joint Commission.

59. R.E. listed a wide variety of medical or surgical services such as skilled nursing and hospice care for which BCBSIL does not require 24-hour nursing presence. This is despite the fact that an individual in a hospice or skilled nursing setting is significantly more likely to require round-the-clock treatment from a nurse than an individual receiving residential treatment. Nevertheless, BCBSIL only places this requirement on residential treatment services.

60. Few if any residential treatment centers satisfy the requirement of 24-hour onsite nursing presence. By including this as a requirement for residential treatment services, BCBSIL is able to offer the appearance of providing coverage for residential treatment while essentially avoiding any and all risk of ever actually paying for a claim.

61. The actions of BCBSIL and the Plan requiring conditions for coverage that do not align with medically necessary standards of care for treatment of mental health and substance use disorders and in requiring accreditation above and beyond the licensing requirements for state law violate MHPAEA because the Plan does not impose similar restrictions and coverage limitations on analogous levels of care for treatment of medical and surgical conditions.

62. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and BCBSIL, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

63. Apart from the summary plan description, BCBSIL and the Plan did not produce the documents the Plaintiffs requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that BCBSIL and the Plan were not in compliance with MHPAEA.

64. In fact, despite R.E.'s request that BCBSIL and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, BCBSIL and the Plan have not

provided R.E. with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, BCBSIL and the Plan have not provided R.E. with any information about the results of this analysis.

65. The violations of MHPAEA by BCBSIL and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendant violate MHPAEA;

    (b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

    (g) An order equitably estopping the Defendant from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of MHPAEA.

66. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for O.E.'s medically necessary treatment at Sunrise under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 29th day of April, 2022.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiffs

County of Plaintiffs' Residence:
Henrico County, Virginia.