## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| R.E. and O.E.,<br><br>             Plaintiffs,<br><br> v.<br><br> BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>             Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br> Case No. 2:22-cv-00296-RJS-DBP<br><br> Chief District Judge Robert J. Shelby<br><br> Chief Magistrate Judge Dustin B. Pead |

Plaintiff R.E. is Plaintiff O.E.'s father.  R.E. is a participant in and O.E. is the beneficiary of a health benefits plan (the Plan) that Defendant Blue Cross Blue Shield of Illinois insures and administers.  The Plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA).  Plaintiffs filed this lawsuit after Blue Cross denied coverage under the Plan for O.E.'s residential mental health treatment.  In their lone cause of action, Plaintiffs allege the denial of Plan benefits violated ERISA.  They seek reversal of the denial and an award of benefits.

Before the court are the parties' cross-motions for summary judgment.[1]  For the reasons stated below, Blue Cross's Motion is DENIED and Plaintiffs' Motion is GRANTED in part and DENIED in part.

---

[1] Dkt. 22, *Blue Cross Blue Shield of Illinois' Motion for Summary Judgment* (*Defendant's MSJ*); Dkt. 24, *Plaintiffs' Motion for Summary Judgment* (*Plaintiffs' MSJ*).

**BACKGROUND**[2]

Plaintiff R.E. and his daughter O.E. are, respectively, a participant in and beneficiary of the Plan.[3]  The Plan is a fully insured employee welfare benefits plan governed by ERISA, for which Blue Cross is the insurer and claims administrator.[4]  Before turning to the legal issues, the court will review the relevant Plan language, O.E.'s medical and treatment history, and the procedural history of this case.

**I.      The Plan**

The Plan's benefits and conditions of coverage are set forth in the Summary Plan Description and the broader Plan Certificate.[5]  To be eligible for benefits, the Plan requires any services to be supplied by a "Provider," defined as "any health care facility . . . or person . . . or entity duly licensed to render Covered Services[6] to you."[7]  A "Covered Service" is "a service or supply specified in this Certificate for which benefits will be provided."[8]

The Plan provides benefits for a range of mental health services.[9]  However, they must meet the requirements of a "Covered Service" defined in the Plan.  The Plan specifies:

---

[2] In evaluating cross-motions for summary judgment, the court must present a neutral summary of the facts.  *Stella v. Davis Cnty.*, No. 1:18-cv-002, 2019 WL 4601611, at *1 n.1 (D. Utah Sept. 23, 2019).  Except where noted, the facts are undisputed.

[3] Dkt. 15, *Amended Complaint* ¶ 3.

[4] *Id.* ¶¶ 2, 3; *Defendant's MSJ* at 2.

[5] Dkt. 30, *Administrative Record* (*AR*) [SEALED] at 8501–8678.

[6] Capitalized terms in the Plan documents are terms for which the Plan provides a specific definition.  *See AR* at 8516 ("Throughout this Certificate, many words are used which have a specific meaning when applied to your health care coverage.  These terms will always begin with a capital letter.  When you come across these terms while reading this Certificate, please refer to these definitions because they will help you understand some of the limitations or special conditions that may apply to your benefits.").

[7] *AR* at 8538–39.

[8] *AR* at 8523.

[9] *AR* at 8607.

> Benefits for all of the Covered Services described in this Certificate are available for the diagnosis and/or treatment of Mental Illness and/or Substance Use Disorders.  Inpatient benefits for these Covered Services will also be provided for the diagnosis and/or treatment of Inpatient Mental Illness in a Residential Treatment Center.  Treatment of a Mental Illness or Substances Use Disorder is eligible when rendered by a Behavioral Health Practitioner working within the scope of their license.[10]

A "Residential Treatment Center" (RTC) is defined in relevant part as a residential facility where "[p]atients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service."[11]

As ERSIA requires, the Plan also sets forth procedures for claim submission, adjudication, and appeal of claim denials.  Inpatient treatment for mental illness or substance use disorders requires preauthorization.[12]  A plan participant or provider must obtain authorization from Blue Cross before receiving covered services to be eligible for maximum benefits.[13]  According to the Plan, if a claim for benefits is denied, Blue Cross must provide written notification to a participant or their authorized representative detailing, among other things, the "reasons for [the] determination" and "reference to the benefit plan provisions on which the denial is based."[14]

If a claim is denied, a participant  may obtain review of that determination by filing an internal appeal with Blue Cross.[15]  During the pendency of an internal appeal, Blue Cross will provide a participant "with any new or additional evidence considered,

---

[10] *Id.*

[11] *AR* at 8542.

[12] *AR* at 8569.

[13] *Id.*

[14] *AR* at 8641.

[15] *AR* at 8648.

relied upon or generated by Blue Cross and Blue Shield in connection with the appeal

Claim, as well as any new or additional or [sic] rationale for a denial at the internal

appeals stage."[16]  The Plan commits to providing this information "as soon as possible

and sufficiently in advance of the date a final decision on appeal is made in order to give

[a participant] a reasonable opportunity to respond."[17]

Following an appeal determination, Blue Cross will provide written notification to

the participant informing them of the decision.[18]  The notification must include, among

other things, the reasons for the decision, references to the Plan provisions supporting the

denial, explanations of denial codes, and "[a] description of the standard that was used in

denying the claim and a discussion of the decision."[19]

The Plan provides a single internal appeal for adverse benefit determinations.[20]

After exhaustion of that appeal, participants may challenge the denial through a civil

action under ERISA.[21]

## II.    O.E.'s Residential Treatment[22]

On March 17, 2020, O.E. was admitted to Solacium Sunrise (Sunrise), a residential

treatment facility in Washington County, Utah.[23]  The facility offers sub-acute inpatient

---

[16] *AR* at 8649.

[17] *Id.*

[18] *AR* at 8650–52.

[19] *Id.*

[20] *AR* at 8648.

[21] *AR* at 8654.

[22] The Record provides no documentation of O.E.'s condition prior to her arrival at Sunrise.  Further, as many of the details pertaining to O.E. and her stay at Sunrise are not relevant to this decision, the factual background provides only a brief summary.

[23] *Defendant's MSJ* at 2; *Plaintiffs' MSJ* at 2.

treatment to adolescents with mental health issues, behavioral challenges, and substance abuse problems.[24]  It is licensed by the State of Utah to provide residential treatment for youth clients.[25]  Sunrise utilizes an Adherent Dialectical Behavior Therapy (DBT) program, which "is a skills-based therapy model developed to improve distress tolerance, emotional regulation, interpersonal effectiveness and mindfulness."[26]  Sunrise also incorporates a variety of other therapeutic modalities, such as recreational and equine therapy.[27]

According to the Initial Treatment Plan signed by a Sunrise social worker on the date O.E. was admitted, O.E.'s parents enrolled her due to issues with marijuana use, poor academic performance, problematic relationships, and other behavioral problems.[28]  A psychiatric evaluation conducted shortly after her enrollment diagnosed her with Disruptive Mood Dysregulation Disorder and Marijuana Use Disorder.[29]  Sunrise staff managed and administered O.E.'s prescribed medication regimen throughout her stay at the facility.[30]  Additionally, O.E. participated in an hour of individual therapy per week and daily group therapy sessions.[31]

Over the nearly nine months O.E. was enrolled, Sunrise records reflect only a handful of interactions with a nurse or physician.  There is a single "Nursing Assessment" and at least three

---

[24] *Amended Complaint* at 2.

[25] *AR* at 2849–50.

[26] *Defendant's MSJ* at 2 (quoting *Therapies*, Sunrise Residential Treatment Center, https://sunrisertc.com/dialectical-behavior-therapy/).

[27] *Defendant's MSJ* at 3.

[28] *AR* at 715–16.

[29] *AR* at 790.

[30] *AR* at 966–70.

[31] *Id.*

"Nursing Notes."[32]  O.E. met with a psychiatrist on six occasions, as evidenced by "Psychiatric

Notes" documenting O.E.'s self-reported moods and providing medication management.[33]

Several "Treatment Team Notes" list O.E.'s medications and state "medical staff will continue to

monitor her health and offer support as needed," but they do not document any further

treatment.[34]  The record also contains numerous "Residential Progress Notes" from Sunrise

staff—not necessarily medical professionals—providing daily updates on O.E.'s behavior and

activity.  O.E. left Sunrise on December 10, 2020.[35]

### III.    Administrative Review Process

#### A.  Preauthorization

On March 18, 2020, R.E., using claims representative Denials Management, attempted to

obtain preauthorization approval for O.E.'s residential treatment at Sunrise.[36]  Blue Cross

verbally denied preauthorization and the Denials Management representative communicated the

decision in an email to Sunrise staff, stating "Unfortunately, [O.E.'s] insurance with BCBS of IL

requires any RTC to have 24 hour nursing On-Site.  They would not accept any pre-auth request,

so no denial will be issued."[37]  In another email, a Denials Management employee stated she

would "reach out to the family to discuss the appeals process and how we will need to review the

---

[32] *See AR* at 781–82 (Mar. 24, 2020: nursing assessment); *AR* at 809 (Mar. 19, 2020: drug screen and pregnancy test upon admission); *AR* at 1574 (Sept. 11, 2020: report of a headache); *AR* at 1557 (Sept. 15, 2020: report of throat and nasal congestion).

[33] *See AR* at 1315 (Apr. 27, 2020); *AR* at 2249 (May 18, 2020); *AR* at 2149 (June 29, 2020), *AR* at 1801 (July 27, 2020); *AR* at 1694 (Aug. 31, 2020); *AR* at 1598 (Sept. 21, 2020).

[34] *See AR* at 2273–75 (May 13, 2020); *AR* at 1865–67 (June 10, 2020); *AR* at 2139–41 (July 1, 2020); *AR* at 1771–73 (Aug. 5, 2020); *AR* at 1680–82 (Sept. 2, 2020); *AR* at 6341–43 (Oct. 6, 2020).

[35] *Plaintiff's MSJ* at 2.

[36] *Id.* at 4.

[37] *Amended Complaint* ¶ 11; *AR* at 802.

plan to see what we can do."[38]  Blue Cross never issued a written denial to Plaintiffs and there was no further communication concerning the initial denial.[39]

### B.  Appeal

On November 18, 2020, R.E. filed a level one member appeal of the denial with Blue Cross.[40]  R.E. requested a copy of all documentation pertaining to the initial denial and argued O.E.'s treatment at Sunrise was covered under the Plan because Sunrise was licensed by the State of Utah, meeting the Plan's definition for a provider.[41]  R.E. did not address whether Sunrise met the Plan's additional criteria for RTCs.[42]

Blue Cross issued a letter on December 22, 2020, denying Plaintiffs' appeal and upholding the initial denial of coverage for O.E.'s treatment at Sunrise.[43]  Concerning the rationale of the initial decision, the letter stated, "This charge is a duplicate of a previously processed claim.  Adjustment: credit only—reason unknown."  The letter provided initial decision codes of 129 and 700.[44]  Concerning the appeal decision, the letter stated:

> After our administrative review of the member's claims and benefit plan, we have determined that these claims have processed accurately.  Claim 02020095555Q3870H has denied with ineligible reason code 700.  This means the provider submitted an adjustment to this claim.  A corrected claim is required.

---

[38] *AR* at 801.

[39] *Plaintiffs' MSJ* at 4; *AR* at 2816 (*Level One Member Appeal*) ("We are requesting a level one member appeal review of [O.E.'s] treatment at Sunrise, which was denied due to nursing staff not being onsite 24/7 . . . . We received a verbal denial, when we attempted to preauthorize [O.E.'s] service per the instructions in our plan documents . . . . BCBS then refused to accept any requests for preauthorization and would therefore not issue any denial in writing.").

[40] *Defendant's MSJ* at 9; *Plaintiffs' MSJ* at 4; *AR* at 2816–25.

[41] *Plaintiffs' MSJ* at 5; *Defendant's MSJ* at 9; *AR* at 2818.

[42] *See AR* at 2816–25.

[43] *Plaintiffs' MSJ* at 5; *AR* at 2921–23.

[44] *AR* at 2921.

> Claim 020203185599E640H is a duplicate of 02020095555Q3870H.  No benefits
> are available at this time.  We regret our decision could not be more favorable.[45]

The letter did not provide a key for the decision codes, nor is one available in the record.

Consistent with the appeals procedures in the Plan, the letter confirmed this was Plaintiffs' one

internal appeal and "internal appeal rights have now been exhausted."[46]

## IV.    Procedural History

Having exhausted their internal appeals, Plaintiffs filed a Complaint on April 29, 2022.[47]

On October 10, 2022, they filed an Amended Complaint.[48]  The Amended Complaint includes

one claim against Blue Cross: recovery of benefits under ERISA 29 U.S.C. § 1132(a)(1)(B).[49]

Plaintiffs also request the court grant them attorney's fees and costs under 29 U.S.C. § 1132(g).[50]

On August 11, 2023, both parties filed a Motion for Summary Judgment.[51]  After briefing

was complete, the court heard argument on the Motions on November 20, 2023.[52]  The Motions,

having been fully briefed and aided by oral argument, are now ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate if the moving party establishes "there is no genuine

issue as to any material fact" and it is "entitled to judgment as a matter of law."[53]  Usually, on a

motion for summary judgment, the evidence and reasonable inferences are viewed in a light

---

[45] *Id.*

[46] *Id.*

[47] Dkt. 2, *Complaint*.

[48] Dkt. 15, *Amended Complaint*.

[49] *Id.* at 6.

[50] *Id.* at 7.

[51] Dkt 22, *Defendant's MSJ*; Dkt. 24, *Plaintiffs' MSJ*.

[52] Dkt. 37.

[53] Fed. R. Civ. P. 56(a).

favorable to the nonmoving party.[54]  However, in an ERISA case where both parties move for summary judgment, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[55]  In reviewing cross-motions for summary judgment, the court must evaluate each motion separately—"the denial of one does not require the grant of another."[56]

## ANALYSIS

There is a single cause of action at issue in the parties' cross-motions for summary judgment: a claim for wrongful denial of Plan benefits under ERISA.[57]  The court first addresses the applicable legal standards before turning to the parties' arguments concerning the denial of benefits claim.  Lastly, the court considers Plaintiffs' request for attorney's fees and costs.

### I.   Denial of Benefits

The court will first outline the standard of review applicable to this claim.  Next, it will set forth governing ERISA principles.  The court then addresses the merits and the proper remedy.  The parties agree de novo is the appropriate standard of review.  As explained below, the court concludes Blue Cross's procedural deficiencies render the court unable to adequately review the claim denial decision and accordingly denies Blue Cross's Motion.  Because these deficiencies also deprived Plaintiffs of the full and fair review ERISA requires, the court grants

---

[54] *See N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[55] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted).

[56] *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 434 (10th Cir. 1979).

[57] *Amended Complaint* at 6.

Plaintiffs' request for reversal of the denial of benefits and remands to Blue Cross for proper reconsideration of their claim.

## A.      Standard of Review

ERISA allows plan participants to seek judicial review of an administrative denial of health benefits under 29 U.S.C. § 1132(a)(1)(B).  But ERISA "does not specify the standard of review that courts should apply."[58]  The Supreme Court has directed that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[59]  Typically, if the plan gives the administrator discretionary authority, courts "employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[60]

Here, Blue Cross concedes de novo is the appropriate standard of review, so the court reviews Blue Cross's denial of benefits de novo.[61]  "When applying a de novo standard in the ERISA context, the role of the court reviewing a denial of benefits is to determine whether the administrator made a correct decision.  The administrator's decision is accorded no deference or presumption of correctness."[62]  However, the court is limited to considering "only 'those rationales that were specifically articulated in the administrative record as the basis for denying

---

[58] *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F. 3d 1311, 1315 (10th Cir. 2009).

[59] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[60] *LaAsmar*, 605 F.3d at 796 (internal quotation omitted).

[61] Dkt. 27, *Blue Cross Blue Shield of Illinois' Opposition to Plaintiffs' Motion for Summary Judgment* (*Defendant's Opposition*) at 3.

[62] *Niles v. Am. Airlines, Inc.*, 269 F. App'x 827, 832 (10th Cir. 2008) (quoting *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808–09 (6th Cir. 2002)).  Pursuant to Tenth Circuit Rule 32.1, the court recognizes *Niles* is not precedential and cites it only for its "persuasive value."  10th Cir. R. 32.1 (citation of unpublished opinions).

the claim.'"[63]  When reviewing an administrator's denial de novo, "the standard is not whether 'substantial evidence' or 'some evidence' supported the administrator's decision; it is whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the district court's independent review."[64]

### B.    Governing ERISA Principles

ERISA's overarching purpose is "to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits."[65]  It largely does this by "regulating the manner in which plans process benefits claims,"[66] including by establishing "minimum requirements for a plan's claims-processing procedure."[67]  Those minimum claims-processing requirements are found in 29 U.S.C. § 1133, which sets forth a two-step process for denying benefits.[68]

The first step mandates "every employee benefit plan . . . provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."[69]  Department of Labor (DOL) regulations implementing this provision detail the information denial notices must contain, including:

- "[t]he specific reasons for the adverse determination,"

---

[63] *Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petrol. Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008)).

[64] *Niles*, 269 F. App'x at 833.

[65] *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003) (quoting *Bruch*, 489 U.S. at 113 (1989)).

[66] *Id.*

[67] *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1299 (10th Cir. 2023).

[68] *Id.*; 29 U.S.C. § 1133.

[69] 29 U.S.C. § 1133(1).

- "the specific plan provisions on which the determinations is based," and

- "[a] description of any additional material or information necessary for the claimant to perfect the claim and explanation of why such material is necessary."[70]

The second step in the claims-processing procedure requires "every employee benefit plan . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."[71]  DOL's implementing regulations direct a plan's administrative review procedures to, among other things:

- "[p]rovide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits,"

- "[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits[,]" and

- "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determinations."[72]

Following the plan administrator's full and fair review, it must "provide claimant with written or electronic notification of a plan's benefit determination."[73]  Similar to the initial denial, this notification must communicate, "in a manner calculated to be understood by the claimant:"

- "[t]he specific reason or reasons for the adverse benefit determination;"

- "[r]eference to the specific plan provisions on which the benefit determination is based;" and

---

[70] 29 C.F.R. § 2560.503-1(g)(1)(i)–(iii).

[71] 29 U.S.C. § 1133(2).

[72] 29 C.F.R. § 2560.503-1(h)(2)(ii)–(iv).

[73] Id. at § 2560.503-1(j).

- "[i]f an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the claimant upon request."[74]

For a claimant, the "'full and fair' administrative review required by ERISA 'means knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.'"[75]  Fundamentally, ERISA requires a "meaningful dialogue" between plan administrators and beneficiaries.[76]  In other words:

> If benefits are denied the reason for the denial must be stated in reasonably clear language[,] if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.  There is nothing extraordinary about this: it's how civilized people communicate with each other regarding important matters.[77]

## C.    Merits

The court now turns to the merits of the parties' Motions.  First, it explains why it cannot conduct a proper de novo review of Blue Cross's denial decision.  Second, it considers the appropriate remedy in light of that conclusion.  Third, it addresses Plaintiffs' request for attorney fees and costs.

---

[74] *Id.* at § 2560.503-1(j)(1), (2), (5)(i).

[75] *David P.*, 77 F.4th at 1300 (quoting *Sage v. Automation, Inc. Pension Plan & Tr.*, 845 F.2d 885, 893–94 (10th Cir. 1988) (internal quotation omitted)).

[76] *Id.*

[77] *Rasenack*, 585 F.3d at 1326 (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003)).

### 1. Denial Review

#### i.      Blue Cross's Motion

In its Motion, Blue Cross contends it denied coverage for O.E.'s treatment at Sunrise because the facility did not meet the criteria for RTCs as defined by the Plan.[78]  To be eligible for coverage under the Plan, an RTC must medically monitor patients "with 24 hour medical availability and 24 hour onsite nursing services."[79]  Blue Cross argues Plaintiffs failed to meet their burden of demonstrating entitlement to benefits because the record contains no evidence Sunrise provided that level of service.[80]  But even if that were accurate, the administrative record is equally devoid of the grounds Blue Cross now asserts supported its denial.  Further, Blue Cross makes no argument that the court is permitted to supplement its de novo review of the denial with a rationale not stated in the denial letter.  Accordingly, the court has no basis to review Blue Cross's denial and cannot determine whether the decision was correct.  As discussed below, Blue Cross's Motion must be denied.

Blue Cross contends it denied Plaintiffs' claim because Sunrise did not provide the level of service required to be a covered RTC under the Plan.[81]  Plaintiffs assert this argument was not raised in writing by Blue Cross during the administrative review process and, therefore, cannot be considered by the court in its de novo review.[82]  In response, Blue Cross argues Plaintiffs' procedural argument is irrelevant because it only goes to determining the appropriate standard of

---

[78] *Defendant's MSJ* at 2.

[79] *Id.*; *AR* at 8542.

[80] *Defendant's MSJ* at 10–11.

[81] *Id.*

[82] Dkt. 28, *Plaintiffs' Opposition to Defendant's Motion for Summary Judgment* (*Plaintiffs' Opposition*) at 2.

review—and Blue Cross agrees that is de novo.[83]   This is true to an extent.  However, as discussed below, Blue Cross's procedural failings remain relevant because its shortcomings impact the court's ability to adequately conduct a de novo review.

First, Blue Cross relies on its apparent verbal communication to Denials Management— Plaintiffs' representative for submitting the claim—to argue the record shows Plaintiffs understood the rationale for denying their claim.[84]   In an email sent after attempting to preauthorize O.E.'s treatment at Sunrise, Denials Management stated Blue Cross "requires any RTC to have 24 hour nursing On-Site.  They would not accept any pre-auth request, so no denial will be issued."[85]   However, this communication and rationale were not part of the administrative record.

As stated above, when reviewing Blue Cross's denial de novo, the court is "limited to considering only the rationale given by [Blue Cross] for that denial."[86]   This means "only the rationale asserted by the plan administrator [Blue Cross] in the administrative record."[87]   In the Tenth Circuit, the court may allow a party to supplement the record with materials beyond the administrative record only if "exceptional circumstances could warrant the admission of additional evidence."[88]   These circumstances include:

> Claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts;

---

[83] *Defendant's Opposition* at 2–3.

[84] Dkt. 31, *Blue Cross Blue Shield of Illinois' Reply in Support of Motion for Summary Judgment* (*Defendant's Reply*) at 6.

[85] *Id.*

[86] *LaAsmar*, 605 F.3d at 800.

[87] *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008) (quoting *Flinders*, 491 F.3d at 1190).

[88] *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1203 (10th Cir. 2002).

> instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant[89] could not have presented in the administrative process.[90]

In the "unusual case" where supplementation is warranted, "[t]he party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing the evidence is necessary to the district court's de novo review."[91]

Blue Cross's verbal communication to Denials Management, and any email Denials Management may have sent following that conversation, are not part of the administrative record.  The administrative record the court may consider consists of what ERISA and the Plan requires Blue Cross to provide—written statements setting forth the grounds for the denial.

At minimum, given the requirement of a "meaningful dialogue," the court understands the administrative record to include only communications between a claimant and the Plan.[92]  An email from a third-party purporting to convey secondhand to another third-party what Blue Cross told them is not that.  The email Blue Cross cites was not even sent to Plaintiffs.  It appears to have been communication between Denials Management and employees affiliated with Sunrise.[93]

Moreover, Blue Cross does not attempt to address this in the briefing nor demonstrate that exceptional circumstances warrant consideration of this supplemental evidence.  Instead,

---

[89] Supplementation of the record is not restricted to claimants.  It may also be permitted to protect the plan administrator.  *See Hall*, 300 F.3d at 1202 n.3.

[90] *Hall*, 300 F.3d at 1203 (quoting *Quinsberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993)).

[91] *Id.*

[92] *See, e.g., David P.*, 77 F.4th at 1313 (declining to consider plan administrator's internal notes for basis of claim denial because ERISA requires a "dialogue" between "plan administrator and a claimant").

[93] *Defendant's Reply* at 6.

Blue Cross asserts "[t]here were no procedural shortcomings" because Plaintiffs understood the grounds for the denial.[94]  Whether Plaintiffs understood or not is irrelevant to whether the administrative record provides a basis for the court to review Blue Cross's decision.  As far as the initial denial goes, it does not.[95]

Next, following review of Plaintiffs' appeal, Blue Cross did provide a decision in writing upholding the initial denial.[96]  Though the initial denial was procedurally deficient and provides the court with nothing to inform its review, the appeal decision was, ostensibly, an opportunity for Blue Cross to make up for its shortcomings.  It could have attempted to engage in a "meaningful dialogue,"[97] communicating its reasoning "in reasonably clear language."[98]  This communication could have clearly set forth the basis for its decision and the relevant provisions of the Plan supporting that decision—as ERISA and the Plan requires.  It did not do that.  Plaintiffs assert the "denial letter doesn't even approximate a decision that communicates a reasoned and principled process."[99]  The court agrees.  The letter provides no intelligible basis for the court to review Blue Cross' decision.

---

[94] *Id.*

[95] At oral argument, Blue Cross argued the Plan did not require a written statement for a preauthorization denial.  At the preauthorization stage, no claim had actually been submitted.  Accordingly, there was no active claim and it was not a claim denial.  The court observes Blue Cross's own argument thus provides an additional basis for declining to consider the third-party email as part of the administrative record.  By Blue Cross's admission, the preauthorization denial was not issued in response to any of the claims at issue in this case.  It is, therefore, not relevant to the court's review.  The court may not consider it part of the administrative record for purposes of reviewing Blue Cross's claim denials.

[96] *AR* at 2921.

[97] *David P.*, 77 F.4th at 1300.

[98] *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004) (quoting *Gilbertson*, 328 F.3d at 635).

[99] *Plaintiffs' MSJ* at 15.

Concerning the initial decision, the appeal denial letter states, "This charge is a duplicate of a previously processed claim, Adjustment: credit only—reason unknown."[100]  It is unclear what this means.  On its face, it certainly does not say what Blue Cross now argues was the basis for the initial denial: that Sunrise did not meet the Plan's definition of an RTC.  The letter then provides two initial decision codes: 129 and 700.[101]  The letter does not provide a reference or explain what these codes mean.  The court finds nothing in the record offering an explanation.  Nor does Blue Cross explain these codes in its briefing.  The court remains in the dark concerning the basis for Blue Cross's denial.

Second, the letter's explanation of Blue Cross's decision on appeal is equally indecipherable.  It states:

> After our administrative review of the member's claims and benefit plan, we have determined that these claims have processed accurately.  Claim 02020095555Q3870H has denied with ineligible reason code 700.  This means the provider submitted an adjustment to the claim.  A corrected claim is required.  Claim 020203185599E640H is a duplicate of 02020095555Q3870H.  No benefits are available at this time.  We regret our decision could not be more favorable.[102]

This does not state the reason for the denial in "reasonably clear language" and the court is unable to determine from this what the grounds were for Blue Cross's decision.

At oral argument, Blue Cross for the first time argued several Explanation of Benefits (EOB) letters sent to Plaintiffs provide context for the language in the appeal denial letter and should also be considered.[103]  In none of the extensive briefing on this matter prior to the hearing did Blue Cross even reference these EOBs.  The court is not permitted to rely "on new arguments

---

[100] *Id.* at 5; *AR* at 523.

[101] *Id.*

[102] *Id.*

[103] *See AR* at 2929; *AR* at 5203; *AR* at 5278; *AR* at 5284; *AR* at 5285; *AR* at 5341.

or materials to decide a summary judgment motion unless the opposing party is provided an opportunity to respond."[104]  Accordingly, the court declines to consider Blue Cross's argument concerning the EOBs.[105]

As stated above, the court's task on de novo review is to determine whether the plan administrator's denial was correct "consider[ing] only the rationale asserted by the plan administrator in the administrative record."[106]  The court is unable to conduct this review when the only rationale in the record is inscrutable.  Nothing in the language of the letter can be construed to support the basis Blue Cross now asserts.  The court concludes Blue Cross's failure to clearly state the grounds for its denial anywhere in the record leaves the court unable to perform a de novo review of Blue Cross's decision.  Blue Cross's Motion is DENIED.[107]

### ii.    Plaintiffs' Motion

The court now turns to the affirmative arguments for benefits Plaintiffs raise in their Motion.  Plaintiffs first argue they are entitled to a reversal of the denial of benefits because Blue

---

[104] *Geddes v. United Staffing Alliance Emp. Med. Plan*, 469 F.3d 919, 928 (10th Cir. 2006) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (affirming district court's refusal to consider defendant's argument raised for the first time at oral argument).

[105] Even if the court were to consider the EOBs, they still do not provide the information ERISA and the Plan require.  For example, one EOB states in a footnote, "This expense/service is not covered under the terms and conditions of your Health Care Plan.  No payment can be made." *AR* at 2929.  This does not provide Plaintiffs or the court with a clear basis for the claim denial, nor point to any provision of the Plan supporting the denial.

[106] *Kellogg*, 549 F.3d at 828.

[107] Blue Cross also argues O.E.'s treatment at Sunrise was not medically necessary. *Defendant's MSJ* at 15–17.  It is beyond dispute Blue Cross never addressed the medical necessity of O.E.'s treatment during the initial claim processing or the administrative appeal.  Blue Cross acknowledges this in their Opposition: "Blue Cross found that Sunrise failed to meet the basic contractual requirements of the Plan . . . and the decision did not require any examination of the record regarding O.E.'s medical condition." *Defendant's Opposition* at 2.  As Plaintiffs correctly point out, Blue Cross may not raise facts or rationales in litigation that were not communicated during the initial administrative process. *Plaintiffs' Opposition* at 10.  ERISA requires plan administrators to provide the specific reasons for a claim denial. 29. U.S.C. § 1133.  The statute's objectives "are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary." *Spradley*, 686 F.3d at 1140.  Blue Cross is not permitted to "sandbag" Plaintiffs with post-hoc rationales, and the court considers only those rationales "specifically articulated in the administrative record as the basis for denying a claim." *Id.*  Because Blue Cross admits it did not consider medical necessity during the administrative process, the court will not further consider its argument now.

Cross's procedural deficiencies deprived them of a full and fair review.[108]  Second, Plaintiffs

advance a merits-based argument that O.E.'s stay at Sunrise should have been covered under the

terms of the Plan.[109]  The court concludes Plaintiffs are entitled to reversal based on the their full

and fair review argument and, therefore, does not address the merits-based argument.[110]

Plaintiffs argue the denial should be reversed because Blue Cross's procedural failings

deprived them of the full and fair review mandated by ERISA and the Plan.[111]  As explained

above, Blue Cross failed to provide a written explanation to Plaintiffs concerning the initial

denial of coverage.  Plaintiffs argue that, while the plan permits a verbal denial, it requires Blue

Cross "provide [] a written or electronic notification . . . no later than three days after the oral

notification."[112]  Further, Plaintiffs assert, the single written denial Blue Cross did issue—the

appeal denial letter—was procedurally deficient for numerous reasons.  It did not reference

specific Plan provisions supporting its decision, nor provide a clear explanation for the denial.[113]

Plaintiffs contend "[a] full and fair review can only occur if there is a meaningful dialogue."[114]

This did not happen here and, as a result, Plaintiffs request reversal of the denial.[115]

---

[108] *Plaintiffs' MSJ* at 14.

[109] *Id.* at 18.

[110] The court also declines to address Plaintiffs' merits-based argument because, as explained above, it cannot adequately conduct a de novo review due to the lack of rationale for the denial in the administrative record.  Without a clear explanation from Blue Cross why Plaintiffs' claim was denied, the court is unable to determine whether the decision was correct.

[111] *Plaintiffs' MSJ* at 14–18.

[112] *Plaintiffs' Reply* at 4 (quoting *AR* at 620).

[113] *Id.*

[114] *Plaintiffs' MSJ* at 16.

[115] *Id.* at 18.

Blue Cross, as discussed above, largely sidesteps the issue. In opposition it argues "Plaintiffs criticize the administrative process, but in truth, there were no procedural shortcomings."[116] Blue Cross further argues the regulations and Plan terms Plaintiffs rely on are "off-point—they apply to medical necessity determination, not denials based on a facility's failure to meet the Plan's contractual coverage requirements."[117] Lastly, Blue Cross contends Plaintiffs' arguments concerning procedural shortcomings are relevant only for determining the standard of review—which Blue Cross does not contest is de novo in this case.[118] Blue Cross's position on its procedural deficiencies was not compelling when offered in support of its own Motion and it remains unpersuasive here.

ERISA requires an insurer to "provide a full and fair review of an initial denial of a claim for benefits."[119] Full and fair review means "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision."[120] Though the administrator is afforded no deference under de novo review, it is still the administrator's decision the court is reviewing.[121] "A showing that the administrator failed to follow ERISA procedures therefore provides a basis for reversal separate

---

[116] *Defendant's Opposition* at 2.

[117] *Id.*

[118] *Id.* at 3.

[119] *Niles*, 269 F. App'x at 832 (citing 29 U.S.C. § 1133(2)).

[120] *D.K. v. United Behav. Health*, 67 F.4th 1224, 1236 (10th Cir. 2023) (quoting *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 893–94 (10th Cir. 1988)).

[121] *Id.*

from that provided by de novo review of the merits of the claim."[122]  Plaintiffs have made that showing here.

Contrary to Blue Cross's conclusory assertion that "there were no procedural shortcomings," the court finds plenty.  They have been discussed in-depth above and are not belabored here.  In brief, the failure to initially convey to Plaintiffs the "specific reason or reasons for the adverse determination" and "the specific plan provisions on which the determination is based" violates ERISA.[123]  The Tenth Circuit recently reiterated these denial letters "play a particular role in ensuring full and fair review."[124]  They are the embodiment of the "meaningful dialogue" ERISA requires.[125]  Even if the court were to accept as sufficient Blue Cross's initial verbal communication, its failure to follow-up with a written communication violates the terms of the Plan.[126]  Similarly, the appeal denial letter fails to explain why Plaintiffs' claim was denied and reference provisions in the Plan supporting that decision.[127]  These deficiencies violate the procedural requirements of ERISA[128] and the claims processing provisions of the Plan.[129]

---

[122] *Id.*

[123] *See* 29 C.F.R. § 2560.503-1(g)(1)(i)–(ii).

[124] *D.K.*, 67 F.4th at 1239.

[125] *See id.* (citing *Gilbertson*, 328 F.3d at 635).

[126] *AR* at 620.  Further, as discussed above, it is not clear this verbal communication has any relevance.  By Blue Cross's own admission at oral argument, the verbal communication was in relation to a request for preauthorization– not a claim.  There was not actually a claim to deny at that point.  From this perspective, the lack of full and fair review becomes more stark.  There is no communication at all concerning the initial claim denial.

[127] *Plaintiffs' MSJ* at 5–6; *AR* at 523.

[128] *See* 29 C.F.R. § 2560.503-1(h), (j).

[129] *AR* at 620–21.

Blue Cross's contention that Plaintiffs' argument concerning procedural shortcomings applies only to medical necessity determinations is also unavailing. Blue Cross asserts the regulations and Plan terms Plaintiffs cite are "off-point—they apply only to medical necessity determinations, not denials based on facility's failure to meet the Plan's contractual coverage requirements."[130] Blue Cross cites no authority for this proposition. The court finds in addition to being unsupported, it is also incorrect.

Plaintiffs' procedural argument cites to 29 C.F.R. § 2560.503-1, the DOL regulations implementing ERISA's procedural requirements. This section, entitled "Claims Procedure," "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries."[131] Nothing in the text of the regulation or the underlying statute indicates its procedural requirements apply only to denials based on medical necessity determinations. Similarly, the claims processing and appeal procedures Plaintiffs cite to in the Plan are phrased to apply to all claims and all denials.[132] Blue Cross does not point to any language that could be construed as cabining the procedures only to denials based on medical necessity determinations.

Next, Blue Cross's argument that procedural shortcomings are irrelevant because the standard of review is uncontested is also incorrect. It is true that procedural deficiencies are evaluated when a court considers the appropriate standard of review.[133] However, in *Niles*, the Tenth Circuit clearly stated "[a] showing that the administrator failed to follow ERISA

---

[130] *Defendant's Opposition* at 2.

[131] 29 C.F.R. § 2560.503-1(a).

[132] *AR* at 620–21.

[133] *See Rasenack*, 585 F.3d at 1316–17.

procedures therefore provides a basis for reversal separate from that provided by a de novo review of the merits of the claim."[134]

Lastly, Blue Cross asserts *L.D. v. UnitedHealthcare Insurance* supports its argument that a full and fair review reversal applies only in the context of medical necessity determinations.[135] However, that decision from this court says nothing of the sort.  There, after noting the Tenth Circuit has indicated a full and fair review argument is a separate grounds for reversal, the court declined to consider these grounds because it was not clear Plaintiffs had made such an argument.[136]  Plaintiffs "framed their full-and-fair review argument as a reason for ruling in their favor on the merits, not as a separate basis for reversal."[137]  Here, Plaintiffs' Motion raises two separate arguments for reversal: one based on the merits of their claim for benefits[138] and one based on Blue Cross's failure to provide a full and fair review.[139]  Therefore, the court appropriately considers Plaintiffs' independent full and fair review argument.

Blue Cross was required to "engage in reasonable, meaningful dialogue in their denials."[140]  They did not do so.  Plaintiffs' request to reverse the denial of benefits due to a lack of a full and fair review is granted.

---

[134] *Niles*, 269 F. App'x at 833 (citing *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 777 (7th Cir. 2003) (reversing denial of benefits and remanding where the lack of reasoning in the record to support administrator's decision deprived claimant of full and fair review)).

[135] No. 1:21-cv-00121-RJS-DBP, 2023 WL 4847421 (D. Utah July 28, 2023).

[136] *Id.* at *12.

[137] *Id.*

[138] *Plaintiffs' MSJ* at 18–19.

[139] *Id.* at 14–18; *Plaintiffs' Reply* at 3–5.

[140] *D.K.*, 67 F.4th at 1240.

## 2.  Remedy

Having determined Plaintiffs are entitled to a reversal of the denial of benefits, the court now considers the appropriate remedy.  Plaintiffs argue an award of benefits is the correct remedy due to Blue Cross's numerous procedural errors.[141]  Quoting Tenth Circuit caselaw, they assert remand "would be contrary to ERSIA fiduciary principles" and reward Blue Cross's misconduct with "an additional bite at the apple."[142]  In its Opposition, Blue Cross argues, if the court finds in favor of Plaintiffs, remand back to the administrator for further adjudication is the appropriate remedy.[143]  The court agrees with Blue Cross.

After finding an administrator's process was procedurally deficient, the court "may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or [it] may order an award of benefits."[144]  An award of benefits is appropriate "if the evidence in the record clearly shows that the claimant is entitled to benefits."[145]  But, "if the plan administrator failed to make adequate findings or to explain adequately the grounds of its decision, the proper remedy is to remand the case to the administrator for further findings or explanation."[146]  This case falls squarely into the latter category.

---

[141] *Plaintiffs' MSJ* at 20.

[142] *Id.* (quoting *D.K.*, 67 F.4th at 1244 (internal quotations omitted)).

[143] *Defendant's Opposition* at 11–13.

[144] *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1015 (10th Cir. 2008) (internal quotations omitted).

[145] *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1229 (10th Cir. 2021) (quoting *Weber*, 541 F.3d at 1015).

[146] *L.D.*, 2023 WL 4847421, at *16 (quoting *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006)).  Although cases addressing remand usually involve a determination that the administrator acted arbitrarily and capriciously, the Tenth Circuit has clarified that "the underlying rationale supporting a remand versus a reinstatement of rights is applicable" to de novo review.  *Ray v. UNUM Life Ins. Co. of Am.*, 224 F. App'x 772, 780 n.3 (10th Cir. 2007) (unpublished).  Pursuant to Tenth Circuit Rule 32.1, the court cites *Ray* only for its persuasive value.  10th Cir. R. 32.1 (citation of unpublished opinions).

The court acknowledges this is a somewhat unusual situation given its inability to conduct any review of the merits of Blue Cross's decision.  However, without inappropriately placing itself in the position of a plan administrator, the court is not satisfied Plaintiffs have shown they are clearly "entitled to benefits."[147]  In *L.D.*, this court concluded remand was appropriate because the lack of any grounds in the record for the administrator's decision "plac[ed] the court in a 'poor position' to review Defendants' denial of coverage."[148]  Here, the court similarly finds itself in a "poor position" to review Blue Cross's denial because its procedural shortcomings leave the record incomplete and leave the court unable to properly review the decision.  Blue Cross has both "failed to make adequate findings" and failed to "explain adequately the grounds of its decision."[149]

For the reasons stated above, the court remands to Blue Cross to conduct a full and fair review of Plaintiffs' claim in accordance with the Plan and ERISA's procedural requirements.

### 3.   Prejudgment Interest and Attorney's Fees

The court now turns to Plaintiffs' request for prejudgment interest, attorney's fees, and costs pursuant to 29 U.S.C. § 1132(g).  In an ERISA matter, "[p]rejudgment interest is . . . available in the court's discretion."[150]  Because the court has remanded to the claims administrator and has not granted an award of benefits, the court declines to award prejudgment interest.[151]  However, the court does conclude an award of attorney's fees and costs is warranted.

---

[147] *Carlile*, 988 F.3d at 1229.

[148] *L.D.*, 2023 WL 4847421, at *16.

[149] *DeGrado*, 451 F.3d at 1175.

[150] *Weber*, 541 F.3d at 1016 (quotation omitted).

[151] *See Raymond M. v. Beacon Health Options*, 463 F. Supp.3d 1250, 1287 (D. Utah 2020) ("Because the court has remanded to the claims administrator and has not awarded a reinstatement of benefits, the court will not award prejudgment interest.").

In ERISA cases, the court "in its discretion may allow a reasonable attorney's fee and costs of action"[152] when a "claimant has achieved some degree of success on the merits."[153]  The Tenth Circuit has set forth five factors guiding the court's discretion:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.[154]

"No single factor is dispositive and a court need not consider every factor in every case."[155]  Concerning costs, 28 U.S.C. § 1920 sets forth the items a party may recover as costs in an ERISA action and the court "has no discretion to award items as costs" not listed in that section.[156]

In this case, Plaintiffs have achieved a degree of success on the merits warranting an award of attorney's fees and costs.  Although the court has not ruled Blue Cross acted in bad faith in denying benefits for O.E.'s stay at Sunrise, it is certainly culpable for its failure to properly evaluate Plaintiffs' claim and for its significant procedural deficiencies.  "ERISA's procedural regulations are meant to promote accurate, cooperative, and reasonably speedy decision-making, not to generate an endless stream of business for employment lawyers."[157]  Blue Cross's conduct here has resulted in only the

---

[152] 29 U.S.C. § 1132(g)(1).

[153] *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) (citation and internal quotation marks omitted).

[154] *Id.*

[155] *Id.*

[156] *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1179 (10th Cir. 2005) (quoting *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990)).

[157] *Gilbertson*, 328 F.3d at 635.

latter.  Blue Cross can satisfy an award of fees.  Further, an award of fees will hopefully

encourage Blue Cross to comply with ERISA's minimum procedural regulations and

engage in a "meaningful dialogue" with future claimants.[158]  Therefore, the court awards

reasonable attorney's fees to Plaintiffs for work performed by Plaintiffs' counsel and

costs as defined by 28 U.S.C. § 1920.  Within twenty-one days of this Order, Plaintiffs'

counsel is directed to submit a petition for attorney's fees and costs, including an

affidavit indicating calculation of fees with an accounting of time and costs.

## CONCLUSION

For the reasons stated above, Blue Cross's Motion for Summary Judgement is DENIED.

Plaintiffs' Motion for Summary Judgment is GRANTED in part and DENIED in part.  Plaintiffs'

request for prejudgment interest is DENIED.  Plaintiffs' request for attorney's fees and costs is

GRANTED.  Plaintiffs' counsel should submit its petition for fees and costs within twenty-one

days of this order.  The court ORDERS that Blue Cross's denial of benefits is REVERSED and

this case is REMANDED to Blue Cross for further proceedings consistent with this decision.

SO ORDERED this 27th day of December 2023.

BY THE COURT:

_____

ROBERT J. SHELBY
United States Chief District Judge

---

[158] *See Raymond M.*, 463 F. Supp.3d at 1287 (discussing deterrence of future procedural violations); *Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp.3d 1159, 1179 (D. Utah 2019) (same).